UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

**In Admiralty**

PROGRESSIVE SELECT INSURANCE
COMPANY,

           Plaintiff,                         CASE NO.:  4:21-cv-10001-JLK

v.

STEVEN LAFACE,

           Defendant.
_____

STEVEN LAFACE,

           Counter-Plaintiff,

v.

PROGRESSIVE SELECT INSURANCE
COMPANY,

           Counter-Defendant.
_____/

## ORDER GRANTING PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court upon Plaintiff/Counter-Defendant, Progressive Select Insurance Company's ("Progressive") Motion for Summary Judgment (the "Motion") [DE 20] and accompanying Statement of Material Facts in Support of Motion for Summary Judgment [DE 21].

### I.    BACKGROUND

On January 11, 2021, Progressive filed an Amended Complaint [DE 3] seeking declaratory judgment. According to the Complaint, Progressive alleges that it is not required to provide insurance coverage under the Boat and Personal Watercraft Policy issued to LaFace for any

defense, loss, damage, or expense suffered or incurred as a result of the burning and sinking of LaFace's Vessel on July 23, 2020 because LaFace was using the Vessel as his primary or permanent residence, in violation of the Policy.  On March 19, 2021, LaFace filed his Answer, Affirmative Defenses and Counterclaims [DE 5]. On January 31, 2022, Plaintiff filed its Motion for Summary Judgment [DE 20]. On February 28, 2022, LaFace filed his Response in Opposition [DE 23] to the Motion, and on March 7, 2022, Progressive Replied [DE 28]. On April 1, 2022, the Court conducted a hearing on the Motion [DE 30] and found that the Motion should be granted.

## II.    RELEVANT UNDISPUTED FACTS[1]

Following his separation from his wife, LaFace moved out of his marital home in Michigan in February 2020, located at 24446 Brentwood Drive, Brownstown, Michigan (the "Marital Home").  LaFace traveled to Florida, where he initially stayed in nine different hotels before purchasing a 2008 Rinker 320 Express Cruiser (HIN: RNK90497J708) (the "Vessel").  LaFace brought many of his personal belongings with him to Florida; most were stored in a storage unit in North Port, Florida, and the remainder on the Vessel.

After leaving the marital home in February 2020, LaFace did not spend any more nights at the Marital Home.  LaFace ceased having any ownership interest in the Marital Home in March 2020 when he sold the Marital Home to his now ex-wife Teresa; however, LaFace's divorce was not finalized until October 2020.  From the time LaFace sold the Marital Home in March 2020 to the date of the incident on July 23, 2020, LaFace did not own or rent a home in Florida, nor did he own or rent any other real property in Florida.

When applying for insurance coverage with Progressive, LaFace stated the Vessel would be used for pleasure: LaFace was asked "what is the primary use of the watercraft," to which he

---

[1] The undisputed facts have been taken from the joint statement of the case contained in the Parties' Joint Pretrial Stipulation [DE 29] and reproduced here.

replied "um, just, uh, a cruiser, you know?"  He was then asked "so, is that pleasure?," to which he replied, "yes, yes."  Relying on this representation that the Vessel would be for pleasure use, Progressive issued LaFace a Boat and Personal Watercraft Policy, Policy Number 936673997, with effective dates of February 28, 2020 to February 28, 2021 (the "Policy").  The Policy provides comprehensive coverage limits of "the lesser of actual cash value at time of loss less deductible or $75,000" and replacement cost personal effects limits of $3,000.

LaFace alleges that in March of 2020 he set out on what was supposed to be a one or two month journey on the Vessel to see different parts of the Florida Keys, the Bahamas, and the Dry Tortugas, and that due to engine trouble and COVID-19 he was unable to have the Vessel worked on until mid-July 2020.  LaFace alleges he was "stuck" in Tarpon Basin off the coast of Key Largo, Florida during that time.

Between February 28, 2020 and July 23, 2020, LaFace slept either in hotels, a cousin's house in Clearwater, or the Vessel.  Specifically, LaFace stayed at hotels from March 11, 2020 to March 23, 2020, while the Vessel was at Bill Bird Marina for maintenance; at his cousin Michelle's house from June 16, 2020 to June 21, 2020; and at hotels from June 21, 2020 through July 14, 2020 while a mechanic was working on replacing one engine on the Vessel and rebuilding another.  The remainder of the time, LaFace slept on the Vessel.

On the evening of July 23, 2020, LaFace's Vessel caught fire and sank in Tarpon Basin off the coast of Key Largo, Florida ("the Loss"). The night of the Loss on July 23, 2020, LaFace stayed overnight in a nearby hotel and rented a car.

After the Loss, LaFace and Progressive spoke over the telephone about his Vessel's property damage claim twice, on July 23, 2020 and on July 28, 2020; each call was recorded for

3

quality assurance with LaFace's permission.  During the recorded call on July 28, 2020, LaFace

made the following statements to Progressive:

> Q. Where were you?  Were you docked somewhere, or were you out on the
> water?
> A. I was out on the water.  [crosstalk]
> Q. OK.  Were you by yourself?
> A. Yes.
> Q. And, uh, w-, um, I just want to understand a little bit.  Were you, uh, do you
> live on the boat, or do you, or were you just out that day fishing or . . .
> A. I have been living, I have been living on the boat.

Progressive denied coverage for LaFace's claim on the basis that the Policy prohibits using

the Vessel as a "primary residence."  LaFace challenges Progressive's denial.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  The moving party bears the burden of establishing that no genuine issues of material fact

remain.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  An issue of fact is material if it is a legal

element of the claim under the applicable substantive law which could affect the outcome of the

case.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue is genuine if the

complete record could lead a rational trier of fact to find for the nonmoving party.  *Id.*

A  court  may  grant  summary  judgment "in declaratory judgment  actions  seeking  a

declaration  [as  to  insurance  coverage]  when  the  insurer's  duty,  if any,  rests  solely  on  the

applicability of the insurance policy, the construction and effect of which is a matter of law." *TIG*

*Ins. Co. v. Smart Sch.*, 401 F.Supp.2d 1334, 1337 (S.D. Fla. 2005) (quoting *Northland Cas. Co. v.*

*HBE Corp.*, 160 F.Supp.2d 1348, 1358 (M.D. Fla. 2001)).  "In a declaratory judgment action, 'if

the allegations in the complaint alleging a claim against the insured either are acts not covered by

the policy or are excluded from the policy's coverage, the insurer is not obligated to defend or indemnify.'" *Id.* (quoting *Northland*, 160 F.Supp.2d at 1357–58).

## IV.   JURISDICTION AND APPLICABLE LAW

This case involves an admiralty and maritime claim within the meaning of 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure because this dispute involves a policy of marine insurance, which is a maritime contract subject to admiralty jurisdiction.

Although the Admiralty Clause of the United States Constitution vests the federal courts with jurisdiction to hear maritime-contract cases, "it does not follow . . . that every term in every maritime contract can only be controlled by some federally defined admiralty rule." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955). In the absence of a "judicially established federal admiralty rule," we rely on state law when addressing questions of marine insurance. *Id.* at 314, 320–21; *see also Fenby v. M/V Three D of Guernsey*, 217 F.App'x 846, 848 (11th Cir. 2007) (per curiam) ("The district court applied Florida law in interpreting the contracts of marine insurance").

"Under Florida law, interpretation of an insurance contract is a matter of law to be decided by the court." *Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1538–39 (11th Cir. 1995). The question of whether an insurance provision is ambiguous is likewise a question of law to be determined by the court. *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, No. 19-22831-Civ, 2020 WL 4501947, 2020 U.S. Dist. LEXIS 79048, at *6 (S.D. Fla. May 4, 2020); *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008).

"[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005); *Siegle v. Progressive Consumers Ins.*

*Co.*, 819 So.2d 732, 734–35 (Fla. 2002). However, "to allow for such a construction the provision must actually be ambiguous . . . [and] courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Taurus*, 913 So.2d at 532. Ultimately, "in the absence of some ambiguity, the intent of the parties to a written contract must be ascertained from the words used in the contract, without resort to extrinsic evidence." *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co.*, 254 F.3d 987, 1003 (11th Cir. 2001); *see also Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1170 (11th Cir. 2017) (affirming summary judgment enforcing exclusion clause in unambiguous policy and explaining "Florida law is clear that ambiguity does not result simply because complex analysis is required to discern the plain meaning of a provision of an insurance contract").

## V.    ANALYSIS

The Policy issued by Progressive to LaFace for the Vessel excludes coverage for property damage losses "arising out of an accident while using the watercraft as a primary or permanent residence" (the "Residence Exclusion"). [DE 3, Ex. A]. In the 146 days between insuring the Vessel on February 28, 2020, and the Loss occurring on July 23, 2020, LaFace spent 106 nights[2] (or approximately 73% of the total nights) sleeping aboard the Vessel. [DE 21 ¶¶ 24]. LaFace split the remaining 40 nights between an assortment of hotels and his cousin's house. *Id.* ¶¶ 23. The question presently before the Court is whether LaFace's living aboard the Vessel qualifies as using his Vessel as a "primary residence" in violation of the Policy's Residence Exclusion. For the reasons below, the Court finds that it does.

---

[2] In ¶ 24 of Progressive's Statement of Material Facts in Support of its Motion for Summary Judgment [DE 21], it is stated that LaFace spent 105 nights aboard the Vessel. For purposes of the instant ruling, the difference between 105 nights and 106 nights is considered immaterial.

Progressive contends summary judgment is appropriate because, during the relevant period, LaFace spent more nights residing aboard his Vessel than anywhere else, stored personal belongings on the Vessel, received mail at a nearby UPS store, and had no other residence. *See* [DE 20]. Regardless of whether he subjectively intended to use the Vessel as his primary residence, Progressive argues that the totality of the circumstances establishes that LaFace used the Vessel as his primary residence, thereby voiding coverage under the Policy. *Id.*

In response, LaFace contends he took a recreational boating trip while in transition from one residence to another, which ended up being extended by engine trouble and the COVID-19 Pandemic and resulting lockdowns. *See* [DE 23]. LaFace explains that he never intended to use the Vessel as a "primary or permanent residence" and was stuck on the Vessel because he was unable to get a mechanic to fix the Vessel for several months. *Id.* LaFace argues the Policy's Residence Exclusion suffers from a latent ambiguity because it does not account for the strange circumstances LaFace found himself in. *Id.*

The decision in *Progressive Garden State Insurance Company v. Metius*, Case No. 18-2893, 2022 WL 214546, 2022 U.S. Dist. LEXIS 13603 (D.N.J. Jan. 25, 2022) is instructive. *Metius* involved the application of an identically worded residence exclusion and, like this case, examined whether the insured used the vessel as his "primary residence." The court determined that "the Policy term 'primary residence' is unambiguous as a matter of law and refers to the main, principal place where the insured lives—that is, the main, principal place where the insured maintains a physical presence as an inhabitant. In even simpler terms, it is where the insured mainly physically resides." *Id.* at *17.

The court in *Metius* used a totality-of-the-circumstances approach and examined the pattern of contact the insured, Metius, had with the particular residence. *Id.* at *19–20. Though it

7

acknowledged the insured's own subjective views regarding their primary residence was one factor to consider when undertaking a primary residence analysis within the context of an insurance coverage dispute, the court explained: "the relevant considerations are objective ones . . . where the individual eats, sleeps, stores personal items, and receives mail; the frequency and nature of the individual's presence at the residence; and the address used on documents such as a driver's license, tax returns, and other records." *Id.* at *19.  Of these factors, the focus of the inquiry is on "factual physical presence." *Id.*

Whereas Metius only spent 59 out of 149 nights on his vessel (approximately 40%), LaFace spent 106 out of 146 nights on his Vessel (approximately 73%).  Unlike LaFace, who owned no real property when the Loss occurred, Metius also had a weekend home, yet, despite spending nights during the policy period at his Blairstown home, the court still found the vessel to be Metius's "primary residence."

The Court finds that the Policy's Residence Exclusion, which prohibits using the Vessel as a primary or permanent residence, is unambiguous as a matter of law, and refers to the place where the insured permanently or routinely or mostly lives.  The undisputed record evidence and the totality of the circumstances presented establish that LaFace spent the majority of his time living on the Vessel and was using the Vessel as his primary residence at the time of the Loss.

## VI.    CONCLUSION

No genuine issues of material fact preclude the entry of summary judgment in Progressive's favor.  LaFace used the Vessel as his primary residence, in violation of the Policy's Residence Exclusion.  Accordingly, it is **ORDERED, ADJUDGED,** and **DECREED** that:

(1) Progressive's Motion for Summary Judgment [DE 20] is **GRANTED**; and

(2) The Court reserves jurisdiction for ruling on motions for fees and costs.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 3rd day of May, 2022.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc:     **All counsel of record**